JUDGE VYSKOCIL

25 CV 08480

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

John J. McCabe
Plaintiff

_____ CV_____

-against-

Jury trial requested:  No

Howard Lutnick, Secretary
United States Department of Commerce
(Bureau of the Census)
Defendant

## EMPLOYMENT DISCRIMINATION COMPLAINT

### I.    PARTIES

**A.  Plaintiff Information**

John J. McCABE
241 Central Park West, #11G
New York, NY  10024
212-877-8943                jjmccabe@outlook.com



U.S. DISTRICT COURT
FILED
OCT 1 4 2025
S.D. OF N.Y.

**B. Defendant Information**

Howard LUTNICK, Secretary
United States Department of Commerce  (Bureau of the Census)
1401 Constitution Avenue, N.W.
Washington, DC  20230

### II.    PLACE OF EMPLOYMENT

Plaintiff was a home-based field employee employed by:
**2020 Census, Area Census Office/ACO 2280 for North Manhattan**
1361 Amsterdam Avenue,   New York, NY  10027

## III.  CAUSE OF ACTION

### A. Federal Claims

This employment discrimination lawsuit is brought under
✓ Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-17 for employment
discrimination based upon race

Plaintiff came to sense a palpable dislike of himself from his Supervisor, Hector
Rodriguez, starting at the orientation meeting during his first three days of
employment with the 2020 Census, although he could not pin it down. During the
training session, Rodriguez provided Plaintiff with a 2020 Census iPad for his use,
which turned out to be unusable both during the training session and thereafter in
Plaintiff's attempts to use it in his daily work. This resulted in Plaintiff being
subjected to a hostile work environment from his immediate supervisor, Recruiting
Manager Rodriguez, almost without exception whenever his job as a field employee
required him to visit the ACO. This included to participate in bi-weekly staff
meetings led by Rodriguez and/or to replenish his supply of promotional materials
for distribution and posting within the North Manhattan community.

Rodriguez's refused to even acknowledge McCabe's ongoing and unresolved
complaint about his non-functioning iPad. Instead, he belittled McCabe in front of
his (all younger) Recruiting Assistant colleagues, attempting to obfuscate what was
a hardware problem with the device Rodriguez himself has issued to Plaintiff, by
casting it instead as McCabe's personal shortcoming as he bellowed across the ACO's
multipurpose room, WHY IS IT ONLY YOU WHO HAS THESE PROBLEMS?

Rodriguez used his shouting and theatrics to turn an objective hardware
configuration issue into a personal attack vector toward McCabe due to Rodriguez's
racial animus toward him as well as his age. (In fact, McCabe was younger than
Rodriguez's stated age disclosed in his sworn statements in this matter, in which
Rodriguez also revealed he thought plaintiff was older then himself.)

McCabe's iPad was finally correctly reprogrammed on Friday, May 22, 2022, and
became useable NINE MONTHS AFTER McCABE HAD RECEIVED IT FROM
RODRIGUEZ. (McCabe received an email instructing him to have his device
powered on and near a window in his apartment that morning from 11:30AM to
12:15PM, then to shut down and restart the iPad. Upon restart, "RA" (as in
Recruiting Assistant) appeared on the screen in large block letters.

Rodriguez had nothing to do with the restoration of Plaintiff's iPad, it was instead
Algenis Mirelys, who has been McCabe OOS (Office Operation Supervisor) until he

transferred to the IT team at the RCC downtown.  Mirelys remembered McCabe's unique situation and contacted him discretely – and, in fact, anonymously over the network – and delivered McCabe the fix his iPad had needed for NINE MONTHS.

Thereafter, the device worked flawlessly without the problems that Rodriguez had denied, not only having suppressed any remedy for NINE MONTHS in his **ABUSE OF AUTHORITY**, but also having nothing to do with the eventual resolution.

<u>and</u>

✓ **Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634,** for employment discrimination on the basis of age (40 or older).
         **I was born in 1952**

Plaintiff McCabe was, in fact, younger than both Defendants Charles Rosenberg and Hector Rodriguez (who, in his filings revealed that he thought Plaintiff was older.)

---

Beyond Rodriguez's discrimination, bullying and shouting at plaintiff in-person, McCabe would much later learn that Rodriguez had also regularly defamed plaintiff to other ACO managers – with both the acquiescence and active participation of ACO Manager Charles Rosenberg, also a defendant in this action.   (**Attachment #1**)

This would come to plaintiff's attention only after a telephone call he had with ACO 2280 Administrative Manager Artyom ("Tym") Matusov about his wish to file an employment action against these two supervisors, who had recently separated from the Agency in the aftermath of ACO 2020 employee complaints.

Plaintiff was surprised to learn from Matusov's email (addressed to several managers at the Regional Census Center (RCC) in downtown Manhattan and copied to ACO 2280), of Rodriguez's open mockery of himself/McCabe during management meetings during which Rosenberg and Naidu both participated.

Plaintiff was shocked later that day when Mr. Matusov phoned to inform him that he had been terminated that same day, after having circulated Plaintiff's complaint via email on distribution that morning.   McCabe felt badly for Matusov and was also left stranded with no idea as to how he should proceed with his complaint

<u>and</u>

✓ Specifically, SEC. 2000e-2. [Section 703] states at (a) Employer practices that:

It shall be an unlawful employment practice for an employer -
(1) to fail or refuse to hire or to discharge any individual, <u>or otherwise to</u>
<u>discriminate against any individual with respect to his</u> compensation, terms,
conditions, or <u>privileges of employment</u>, because of such individual's **race**, color,
religion, sex, or national origin.

McCabe had owned and operated his **Apple iPhone 4S since 2012,** and was eager to
gain related Apple experience working with an iPad, which work experience he was
wrongfully denied him by Rodriguez with the acquiescence of Rosenberg.  While in
their sworn statements both defendants disavow prejudicial motivations of race and
age for their animus toward McCabe, despite the fact that McCabe was the youngest
of the three.

In this matter, McCabe's employer discriminated against him with respect to his
privileges of employment when his supervisor (Rodriguez) denied him - over a period
of **nine months** as a Recruiting Assistant - the privilege of employment of using and
gaining work experience with an Apple iPad electronic tablet, which had a **"will use"**
**requirement** for Recruiting Assistants as published in the 2020 Census Recruiting
Manual.

The 2020 Census Recruiting Manual of March 1, 2019 states at pages 2-15--2-16:
> "Outreach Jobs
>
> "One position is considered an outreach position, the **Recruiting Assistant.**
> Outreach means to go into a community and present a message or conduct an
> action and get people to respond.
>
> "3.  Recruiting Assistants (RAs) will …

- **"Use an electronic tablet to review recruiting reports and maps,**
  **use e-mail to communicate with office staff and organizations that**
  **provide potential recruiting sources, and complete other job tasks."**

Rodriguez's suggestions during his employment that McCabe use a paper calendar
neither fulfilled his expectation of iPad experience to be gained, nor replicated the
21st century feature set that a functioning iPad would have provided beyond a basic
paper calendar, a 19th century "technology".

Plaintiff observed that Rodriguez's suggestion was absurd pointed to the wealth of
data attached to each event that could be "plugged in" or forwarded/duplicated /
removed with a single keystroke by any user while maintaining its integrity within
the system.

Certainly a paper calendar could not replace Plaintiff's missing email functionality,
allow him to review recruiting reports and maps, or complete other job tasks.)  In
fact, Plaintiff already kept a paper calendar in which he kept track of his personal
schedule (which would be improper to load onto a federal government device) simply
to assure that he would not conflict personal and Census event time blocks.

Defendant Hector Rodriguez discriminated against Caucasian Plaintiff and created a hostile work environment for him by humiliating and belittling him in front of his younger, primarily Black and Hispanic colleagues during bi-weekly staff meetings. Rodriguez regularly turned Plaintiff's pleas for an escalation of technical support (for his improperly-configured iPad that Rodriguez had issued to him on his first days of employment) despite Rodriguez's blanket statement to the contrary that, **"I did not issue the iPads to staff,"**          [ROI 000364 in his "sworn statement"].

Similarly, under "Harassment: Complainant never reported allegations of harassment to me." Rodriguez would have gone *berserk* if Plaintiff had brought a claim of harassment **ABOUT him, TO him,** so Plaintiff must concede – in the most restricted of terms – to the accuracy of that statement.    **RODRIGUEZ WAS McCABE'S HARASSER.**

Over **EIGHT MONTHS,** Rodriguez stonewalled McCabe's bi-weekly pleas for substantive technical support with his Census-issued iPad, each time choosing to turn requests for technical assistance into personal attacks on Plaintiff by repeatedly asking, **"Why is it *only you* who has these problems?"** Clearly this constituted a protracted 8-month campaign of personal harassment.

Plaintiff did not recognize that he was being discriminated specifically because of his race until – at a farewell address to the ACO 2280 staff in the lobby area – Hector Rodriguez spoke of an incident that happened *50 years ago* with an immediacy as if it was yesterday. He told of "*getting into a fist-fight with a white man at a school board meeting in Manhattan,*" (alerting Plaintiff that he could be both violent and racist).

Most importantly, however, Hector – who always spoke of his 30 years working with EEO while he worked with NYS – had, in his moment of need to puff himself up a bit as he exited this employment, let down his guard and let it be slip that his resentment and animus toward Caucasians was as visceral as it was all those years ago.

Notwithstanding his 30 year association with EEO work, in which he learned *what not to say,* his need to shine at this nadir of his 2020 Census leadership let slip the truth, and Plaintiff was right there in the room to hear it, and to lock eyes with Rodriguez when he scanned the crowd looking for his witness, now the Plaintiff in this action.

SEC 623 [Section 4] of the ADEA of 1967 (a) employment practices ... "It shall be unlawful for an employer (1) to otherwise discriminate against any individual with respect to his compensation, terms, **conditions, or privileges of employment,** because of such individual's age;

### B. Other Claims

In addition to my federal claims listed above, I assert claims under:

✓ **New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297**, for employment discrimination on the basis of age and/or race.

✓ **New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131**, for employment discrimination on the basis of actual or perceived age or race.

## IV.   STATEMENT OF CLAIM

### A. Adverse Employment Action

The defendant in this case took the following adverse employment actions against me:

✓ did not promote me
      when other Recruiting Assistants were promoted in April 2020

✓ provided me with terms and conditions of employment different from those of
      similar employees
      (all other RAs in ACO2280 had fully-functioning RA iPads)

✓ retaliated against me
      mostly through humiliating Plaintiff in front of his colleagues during Bi-
      Weekly meetings, treating him like a fool, screaming at him at a volume that
      could be heard throughout the ACO, broadcasting any alleged infraction by
      Plaintiff. (To think this was done under the aegis of the U.S. Federal
      Government was a complete disgrace.

✓ harassed me and created a hostile work environment
      Rodriguez harassed Plaintiff and created a hostile work environment
      resulting in McCabe choosing - after all recruiting goals had been
      reached – to forego working in proximity to Mssrs. Rodriguez and Rosenberg,
      and the offer of in-office work at ACO2280. McCabe opted **instead to**
      **volunteer to be seconded to recruit on the sidewalks of South Manhattan**
      **(where recruiting goals had not yet been met) in the cold of winter working**
      **under the South Manhattan ACO management from January through**
      **March 21, 2020** (on which date all Census employees were called out of the
      field due to the imposition of COVID-19 shelter-at-home rules).

B. Facts – State here the facts of your claim.  Attach addl pages if needed.  You should explain what actions defendants took (or failed to take) because of your protected characteristic, such as your race, and age. Include times and locations, if possible.

See also, please, at Federal Claims, page 2, *supra*.

In his Declaration of 05-05-2022, Hector Rodriguez wrote:  "Email and calendar access were never affected by which iPad an employee had. **Complainant was assigned two or three iPads** because of the many issues he said he was having."            [ROI 000364]

Hector swore over his signature that:  "I have read the above statement consisting of 5 pages. **I declare under the penalty of perjury that my statement is true, correct, and complete to the best of my knowledge and belief.**  I understand that the information I have given is not to be considered confidential and that it may be shown to interested parties." [ROI 000366]

Despite Hector's claims that Plaintiff "...was assigned two or three iPads...", the "ITMS Data Request for EEO Inquiry" provided at [ROI 000518-000520] proves beyond a shadow of doubt that Hector Rodriguez's above statement is both material in this matter and FALSE.

## IV-A.  HECTOR RODRIGUEZ PERJURED HIMSELF IN HIS DECLARATION: *HIS TESTIMONY IN THIS MATTER SHOULD BE STRICKEN*

On May 5, 2022, Hector Rodriguez signed and dated his witness statement [ROI 000366] in which he averred:  "**I declare under the penalty of perjury that my statement is true, correct, and complete to the best of my knowledge and belief.**  I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties."

In his attempts to unjustly slander Complainant, Hector Rodriguez set to spinning false narratives claiming that "**Complainant was assigned two or three iPads**" writing:            [ROI 000364]

> "Recruiting Assistant iPads did not have access to information the managers had access to, but this would not have interfered with Complainant's ability to do his job.  Email and calendar access were never affected by which iPad an employee had.  **Complainant was assigned two or three iPads because of the many issues he said he was having.**" - HR

The Government of the United States is nothing if not scrupulous in the documentation of its property.  In the Report of Investigation [ROI] is an "ITMS Data Request for EEO Inquiry" [ROI 000518-20] are found three sets of data points **that confirm that Hector's statements are false.**

7

**The first set of data points** is for the ITMS log for September 2019 "**showing the custody transfer of Agency issued devices to all Recruiting Assistant's in the North Manhattan ACO, including who transferred, assigned, and received an Agency issued device, annotated by type of device assigned (iPad/iPhone), the employee names, position title, race, and age.**" The output displays the **Employee Name, Employee ID**, and **DAID** (a unique ID comprised of 4 letter and 6 digits) and includes:                    [ROI 000518]

Employee Name          DAID
**McCabe, John J**        daai **137258**

The associated "assigned to" info states:
  • **9/5/2019 ITMS custody transfer of iPad 44868 to daaii137258**
  [and four others, ***none with daaii137258*** = McCabe, John J]

**The second set of data points** is for the months between September 2019 until July 2020 "showing the number of Agency issued devices (iPads) Complainant (John McCabe) was issued, including dates of issuance" and includes (where **daai 137258** = McCabe):
  • **9/5/2019** ITMS **custody transfer of iPad 44868** to daai **137258**
  • 2/12/2020 reassignment from HUB login of **(same) iPad 44848** to daai **137258**
  • 4/10/2020 reassignment from HUB login of **iPhone 1049054** to daai **137258**

Simply stated, Complainant took custody of **iPad 44868** on **9/5/2019**. That same device was reassigned from the HUB login on 2/12/2020 ("**same**" device is noted and **no change in iPad ID**). And, on 4/10/2020 as COVID 19 required employees to "shelter at home," Complainant was issued an iPhone for use from his apartment to reach out to applicants during lockdown with updates on the 2020 Census. (Phone calls during the pandemic had to be made from a 2020 Census phone – rather than an employee's personal cell phone - because they might contain "PII," Personally Identifying Information, requiring protection).

2. **"ITMS log" dated between September 2018 until July 2020,** shows the number of Agency issued devices (iPads) Complainant (John McCabe) was issued, including the dates of issuance.
  • **9/5/2019** ITMS **custody transfer of iPad 44868** to daai **137258**
  • 2/12/2020 reassignment from HUB login of **(same) iPad 44848** to daai **137258**
  • 4/10/2020 reassignment from HUB login of **iPhone 1049054** to daai **137258**

In conclusion, <u>**Hector Rodriguez was lying**</u> when he said "**Complainant was assigned two or three iPads because of the many issues he said he was having.**" <u>**Furthermore, he was doing so under oath**</u>. Accordingly, his testimony in this matter should be stricken from the record and from previous filings by the parties.

8

Hector was also prevaricating when he claimed that "**Email and calendar access were never affected by which iPad an employee had.**"  Yet an Interrogatory dated April 22, 2022 by Ms. Anais Reyes, Information Technology Manager & Office Operation Supervisor/IT Department of the South Bronx ACO tells quite a different set of facts.  She claims that after McCabe's visit to the South Bronx ACO that she spoke with him, told him McCabe had a Manager's iPad rather than a Recruiting Assistant's and need his iPad replaced.  In retelling, Rodriguez claims nothing of the sort, as he creates his own reality with his speaking.

IV-B.  "**Chapter 1. Receipt of iPad**" was the first page [ Page | 1-1 ] in the **Recruiting Manual**.

Page 1-1 commences with "Objectives" and continues, "This chapter covers:"

- Employee Receipt of iPad
- Using the iPad
- Using iPad Finger Actions
- Loggin in to the iPad for the First Time
- Resetting the iPad Passcode
- Changing Your Network Password and Setting your Security Questions
- Connecting to the Internet by Wi-Fi/Cellular Connections

The iPad given to Plaintiff  by Defendant Hector Rodriguez was not able to be accessed during the third and final (Friday) session when the two ACO 2280 Recruiting Assistants were given their iPads.  Ms. Vadi was able to follow the instructions during the training session, but was not able to do likewise with Mr. McCabe's iPad (nor was he.)

Recruiting Manager Hector Rodriguez called the South Bronx ACO information technology team and Hector was told to have McCabe leave his iPad plugged-in and powered-on on a table near to a window, and that the So.Bronx ACO would "push" a software fix to his device. McCabe followed these directions and was able to login to the device over the weekend, follow the instructions at the start of the "2020 Census Recruiting Manual," and complete the 27 pages comprising Chapter 1. Receipt of iPad (as Ms. Vadi had done with her device during Friday's final training session.)

**IV-C.  McCABE <u>DID NOT CALL THE SOUTH BRONX OFFICE AS RODRIGUEZ
ACCUSED HIM</u> / HE CALLED, AND REACHED, THE 2020 CENSUS 800 HELPLINE**

Plaintiff had called the toll-free helpline published in the 2020 Census Recruiting Manual, which
prompted callers to enter their 5-digit zip code before processing their call.  Based on his 10024
zip code in the North Manhattan, Plaintiff should have been routed to his own ACO, however he
was routed to the South Bronx ACO.  This was due to the fact that before the North Manhattan
ACO was open it was temporarily accommodated in the South Bronx ACO and, after their own
ACO opened, it seems that Management at the North Manhattan ACO had neglected to forward
the toll-free number to their newly installed telephones.  Effectively, Rodriguez was savaging
McCabe for something that Rodriguez himself had neglected to complete in the process of
relocating the office.  (No apology to McCabe was forthcoming, of course.)

By late November, McCabe had mostly completed his recruiting visits to the many churches,
synagogues and mosques in the North Manhattan ACO territory.  After ACO 2280 had opened
for business in Harlem in October 2019, McCabe began to receive more email and invitations to
participate in events.  He also began to lose his iPad email and other services, which had never
happened when he was among less than fifteen employees of ACO2280 (and received virtually
zero emails and system messages).

With the ACO 2280 office opening in late October, Recruiting Manager Hector Rodriguez
scheduled regular bi-weekly "all-hands" meetings for ACO 2280 recruiting assistants (RAs) who
worked in the field – both independently and in groups - to meet together in the ACO's multi-
purpose room.  At one of the first such meetings, Plaintiff mentioned that he was having issues
with his iPad, and Rodriguez directed him to a former RA, since promoted to Office Operations
Supervisor (OOS) **Algenis Mirelys, an American military veteran** interested in a career in I.T.

**At the conclusion of this evaluation and review in early November 2019, Mr. Mirelys
informed McCabe that he had identified the problem, and downloaded and reloaded the
correct software, <u>only to have the overwrite fail</u>.**  Mirelys was uncertain how to proceed under
the circumstances, and soon after in January 2021 was promoted to work at the Regional Census
Center downtown in the IT section.

**SIX MONTHS LATER**, McCabe received a system email instructing him to have his iPad
powered-on and near a window from 11:30AM-12:15PM on Friday, May 22, 2020.  McCabe did
so and, after powering on, the block letters "RA" an inch-and-a-half tall appeared at the center of
the iPad screen.  McCabe never had another problem with his iPad, **but it had taken SIX
MONTHS to finally reach this resolution reformatting his Recruiting Manager's iPad into
a working Recruiting Assistant's iPad, during which Plaintiff had suffered derision, verbal
abuse, sleepless nights, anxiety, and three months of winter on the streets of South
Manhattan to both preserve his employment and avoid conflict that would have surely**

arisen if he had chosen to work instead in the ACO 2280 office premises with Hector and, of course, Charles in-charge.

In her reply to Q.7. in the Interrogatory questionnaire, Ms. Reyes (who identified as "American Indian" and is primarily Spanish speaking) was asked at Q.5. therein: "Are you aware of Complainant's race? If so, please state when you became aware of it and what you believe it to be." Ms. Reyes wrote: "Yes, discrimination based on ancestry or physical or cultural characteristics"

It was this type of suboptimal question and response information during McCabe's phone conversation with Ms. Reyes that led him to ask her where in the USA she was located, although he expected it to be at a call center in the American heartland. When Ms. Reyes said, "the South Bronx ACO," McCabe's heart leaped, and he asked if he could come and speak with her in-person (hoping for greater clarity on discussion items on which he was not clear based on their telephone call.)

She would be there for at least 2 hours, and gave him the South Bronx ACO's address, phone number and the nearest subway stop.  He was out the door in a heartbeat, hoping that understanding was within reach.


**IV-D.   AFTER SUBMITTING AN "EAST SIDE PLAN OF ACTION" TO ACO MANAGERS ON JAN 13, A MAJOR CHANGE WOULD REQUIRE APPROVAL FROM "UP THE CHAIN OF COMMAND"**

Nicole L. arrived to execute the CANVASSING PLAN OF ACTION (**Attachment  2 1. & 2.2.**) at 8:30AM on Tuesday, 14 Jan 2020 but, although she had declined to participate in planning session the previous day, wanted to significantly change the process.  Rather than canvassing individually and each working toward the center, she wanted for us to both call at each addresses together, which deviated significantly from the PLAN OF ACTION submitted to Rodriguez, Mirelys and Speed the previous day.  Despite reassurances that this was one of the poshest neighborhoods in Manhattan, she persisted.  To ease any possible anxiety, Plaintiff offered to have her join him on his first call, which went very well (the doormen offered to put census brochures at each apartment door.)

At the conclusion of that brief but successful call, she still insisted that she wanted to go as a pair.  Plaintiff explained that, given that the plan had been submitted to management the day before, a decision to revised it to such an extent would require clearance from "up the chain of command" (as the management team had taken to saying.)  Plaintiff explained that, as his peer, she was welcome to phone or visit the ACO to seek such permission, however plaintiff had no authorization to work other than according to the submitted plan, and that is what he would do.

As his visits in the neighborhood progressed that morning, Plaintiff received a call from Mr. Mirelys calling him back to the ACO. There, in the multipurpose room, he was set upon by Hector Rodriguez screaming accusations at the top of his lungs in the presence of Charles Rosenberg, Skender Naidu and Mr. Mirelys.  Plaintiff sat passively and took Hector's diatribe silently.

He would subsequently hear from Mr. Speed that Hector had sent him down that same morning to speak to the two doormen in the lobby of 1030 Fifth Avenue and, not only was Speed told the neither had seen Nicole cry, but also that the meeting with the two doormen was very pleasant. Plaintiff later heard that Nicole "went AWOL" thereafter; neither an apology nor aftermath from Hector followed.  It was one of the most humiliating – and infuriating – days of Plaintiff's life.


## IV-E.  HECTOR'S MEMORY FROM 2022 IS FALSE AND UNRELIABLE

Hector Rodriguez claims that, "I did not issue the iPads to staff, but I do recall that different iPads had different programs on it.  If an employee received a manager iPad and they were not a manager, IT just needed to reprogram it."  [ROI 000364]   Dated 05-05-2022

Regardless, the veracity of Hector's words and claims are gravely suspect, as his claim that Plaintiff was provided with two or three iPads, when it has been proven he only ever had one.

Charles Rosenberg's complicity in Hector's reign of terror should be shameful to him, but don't believe he is acquainted with the term shame.

McCabe was glad to hear that the duo had "retired," but he knows they deserved much less.

## V.    ADMINISTRATIVE PROCEDURES

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

✓ Yes

Charge was timely filed; Plaintiff is uncertain at this time as to exactly when.   See next.

Have you received a Notice of Right to Sue from the EEOC?

✓ Yes

What is the date of the Notice?          **July 16, 2025**
When did you receive the Notice?          **July 21, 2025**

## VI.  RELIEF

The relief I want the court to order is:

Direct the defendant to compensate Plaintiff as follows:
$   1,500.00  in back pay
$ 10,000.00  in front pay
$ 75,000.00  in compensatory damages

Plaintiff's felt trapped not only due to Defendant Hector Rodriguez's ongoing abusive behavior toward him, but also by his supervisor ACO Manager Charles Rosenberg's complacency about - and indeed complicity in – Hector's abusive behavior toward Plaintiff, which Rosenberg allowed to go unchecked.  McCabe liked the job and enjoyed working in the field, but between Rodriguez's blaming Plaintiff for the problems with his Census-issued iPad and his refusal to escalate the issue to tech teams outside the ACO things were unbearable.

Plaintiff could sense no avenue of relief from the situation, which created stress such as he had never before endured.  Such as physical and psychological manifestations that he had never experienced before, and a diminished enjoyment of life.  These included stress, anxiety, depression, feeling overwhelmed, fatigue, insomnia, waking up at night and unable to fall back to sleep, withdrawal from social activities, difficulty falling sleeping, and, naturally, job dissatisfaction. All of which resolved themselves once Hector and Charles both had been *encouraged to leave* – via resignations, of course - from ACO 2280 management and 2020 Census employment in Q2 2020.

## VII.    PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a non-frivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rules of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Plaintiff must sign and date the complaint.

__October 14, 2025_____        _____
Dated                                     Plaintiff's Signature

__John_____J._____McCABE_____
First Name            Middle Initial     Last Name

__241 Central Park West, Apt. 11G _____
Street Address

__New York, New York _____ New York _____ 10024 _____
County, City                      State                 Zip Code

__ 212-877-8943 _____          __ jjmccabe@outlook.com _____
Telephone Number                          Email Address

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
        ✓ Yes
**If you do consent to receive documents electronically, submit the completed form with your complaint.**

# SCHEDULE   OF   ATTACHMENTS

**Attachment 1**          Artyom Matsuov's email to RCC & ACO
                          Management dated June 19, 2020

**Attachment 2.1**        John McCabe's East Side Plan of Action to
                          ACO 2280 Management dated Jan 13, 2020
                          for approval up the "chain of command"

**Attachment 2.2**        East Side Plan of Action approved for execution
                          by "chain of command" (Rodriguez, Mirelys,
                          Speed) for Tues, morning of Jan 14, 2020

ATTACHMENT 1

**From:** Artyom E Matusov (CENSUS/PFLD FED) <artyom.e.matusov@2020census.gov>
**Sent:** Friday, June 19, 2020 12:04 PM
**To:** Heriberto Rios (CENSUS/NY FED) <Heriberto.Rios@2020census.gov>
**Cc:** Johnny Lu (CENSUS/NY FED) <johnny.lu@2020census.gov>; Mercedes S Martinez (CENSUS/NY FED) <mercedes.s.martinez@2020census.gov>; William Mercado (CENSUS/NY FED) <William.Mercado@2020census.gov>; Monique T Scott (CENSUS/PFLD FED) <monique.scott@2020census.gov>; John J Mccabe (CENSUS/PFLD FED) <john.j.mccabe@2020census.gov>
**Subject:** Complaint and request from John McCabe

Hi Herbie,

I just received a call from John McCabe, who is an RA/CRR, and has been with ACO since the office opened last September.

He wishes to go on unpaid leave immediately. He claims that for the entire year, he worked in a hostile work environment under Hector, and that both Charles and Skender were aware, and did nothing to help him.

Although I cannot speak to the exact issues, I can affirm that I saw Hector be verbally abusive to John and his other staff members many times, and heard many instances where Hector, Charles and Skender openly mocked John McCabe by name, behind his back. I always thought it was highly inappropriate, but felt powerless to intervene.

John would like to point to a specific incident on January 14th, 2020, when he came into the ACO multi-purpose room. Charles, Skender, Algenis, and Hector were there. Hector starting verbally abusing John. Charles and Skender just walked out, while Algenis witnessed the entire incident.

John says he needs time to figure out whether he wants to resolve this internally or externally.

I will wait for your reply before telling him he has leave.

Thank you,
Tym

Artyom (Tym) Matusov
Administrative Manager
Manhattan North Area Census Office
Field Division
U.S. Census Bureau

Office: 212.801.7482
Mobile: 347.325.1079
Fax: 212.801.7504
artyom.e.matusov@2020census.gov

census.gov
Connect with us on Social Media

jjmccabe@hotmail.com                                    ATTACHMENT#2 - p.1

| | |
|---|---|
| From: | John J Mccabe (CENSUS/PFLD FED) <john.j.mccabe@2020census.gov> |
| Sent: | Monday, January 13, 2020 8:42 PM |
| To: | Hector Rodriguez (CENSUS/PFLD FED); Algenis S Mirelys (CENSUS/PFLD FED); Gregory L Speed (CENSUS/PFLD FED) |
| Subject: | Recap for Monday, January 13, 2020 & JMcCabe - East Side Plan of Action |
| Attachments: | JMcCabe - East Side Plan of Action.pdf |

JOHN McCABE

Recap for Monday, January 13, 2020

330PM-530PM
Research UES census tracts
Reply to ACO cc: Nicole for rendezvous and to offer advance assistance
2 hrs

730PM-845PM
Developed a Plan of Action for Tuesday, 14 January 2020 collaboration with Nicole Lopez, proposing that she take
the lead on the Thursday, 16 January
Create recap and billing
1 hr 15 mins

TOTAL: 3 hours 15 mins
==================


---
Sent from Workspace ONE Boxer

---------- Forwarded message ----------

**From:** John M <jjmccabe@hotmail.com>
**Date:** January 13, 2020 at 8:38:48 PM EST
**Subject:** Emailing: JMcCabe - East Side Plan of Action
**To:** John J Mccabe (CENSUS/PFLD FED) <john.j.mccabe@2020census.gov>


Attachment:   JMcCabe - East Side Plan of Action

jjmccabe@hotmail.com

From:        John McCabe (CENSUS/PHD/PHD) <john.mccabe2020@census.gov>
Sent:        Monday, January 13, 2020 8:43 PM
To:          Hector Rodriguez (CENSUS/PHD/PHD); Allyson C Mabyn (CENSUS/PHD/PHD); Gregory Capra (CENSUS/PHD/PHD)
Subject:     Recap to Monday, January 13, 2020 & McCabe - East Side Plan of Action
Attachments: McCabe - East Side Plan of Action.pdf

JOHN McCABE

Recap For Monday, January 13, 2020

4:30PM-5:00PM
Reason: PHD census truth
Reply to ACO cc: Nicole Lopez re: need to offer advance assistance
2 hrs

7:30PM-8:45PM
Developed a Plan of Action for Tuesday, 14 January 2020 collaboration with Nicole Lopez, proposing that she take the lead on the Thursday, 16 January
Cease recap and billing
1 hr 15 mins

TOTAL: 3 hours 15 mins

----
Sent from Work Email System

---------- Forwarded message ----------
From: John M <jjmccabe@hotmail.com>
Date: January 13, 2020 at 5:38:42 PM EST
Subject: Emailing: McCabe - East Side Plan of Action
To: John J McCabe (CENSUS/PHD) D (PED) <john.mccabe2020@census.gov>

Attachment:    McCabe - East Side Plan of Action

*ATTACHMENT #2 – p.2*

NICOLE L.        646-651-████        JOHN M.        917-832-████

### ACO 2280 :: CANVASSING PLAN OF ACTION :: TUESDAY, 14 JANUARY 2020

| | |
|---|---|
| 8:00AM | Meet at Starbucks, 1142 Madison Ave (84-85, west side) |
| | Review Plan of Action for Tract 15001 :: STATUS: Recruitment Progress = 4/13 (30.8%) Brief discussion of Mojo and tract research |
| 8:30AM | Depart as follows continuing until you meet up with partner or 10:00AM rendezvous: |
| NICOLE | Go to northeast corner of tract 15001 and proceed westward along the south side of the street calling at all residential buildings seeking posting of recruitment materials in laundry rooms. |
| | Upon reaching the western edge of the tract, head south and stop at all buildings on the east side of the street for one block. |
| | Head east along the north side of the street to the eastern edge of the tract.  Cross the street, and proceed westward along the south side of the street. |
| JOHN | Go to southwest corner of tract 15001 and proceed eastward along the north side of the street calling at all residential buildings seeking posting of recruitment materials in laundry rooms. |
| | Upon reaching the eastern edge of the tract, head north and stop at all buildings on the west side of the street for one block. |
| | Head west along the south side of the street to the western edge of the tract.  Cross the street, and proceed eastward along the south side of the street. |
| 10:00AM | If partners have not met up before 10:00AM, proceed back to Starbucks to rendezvous there. |
| | Critique plan of action and discuss best practices. |
| 10:30AM | Proceed to tract 15002 and repeat, with Nicole again starting at the northeast corner of the tract, and John at the southwest corner. |
| 12:30PM | Lunch |
| 1:00PM | Resume tract 15002 canvassing |
| 3:15PM | Rendezvous at the NYPL 96th Street branch at 112 East 96th Street (between Park-Lex) |
| 3:30PM | Go home after brief discussion of results/successes/areas for improvement |
| WORKDAY: | 8 hours (including travel) |